UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **YINZHI ZHANG, ET AL.,** | ) | **Case No. 1:07CV224** |
| | ) | |
| Plaintiffs, | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **SECRETARY OF HOMELAND** | ) | |
| **SECURITY, ET AL.,** | ) | |
| Defendants. | ) | |

With this case, plaintiffs Yinzhi Zang, Zhong Tang, and Ruizhe Tang, Chinese nationals, seek to compel United States Citizenship and Immigration Services[1] (USCIS) to "immediately" adjudicate their adjustment of status applications (First Amended Complaint at p. 9).  Plaintiffs look to the following sources for relief: federal question jurisdiction, 28 U.S.C. § 1331; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedures Act (APA), 5 U.S.C. §§ 555 and 701 *et seq*; and the mandamus statute, 28 U.S.C. § 1361.

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants have moved to dismiss the First Amended Complaint (Docket No. 7).  Plaintiffs oppose the motion (Docket No. 8).  For the reasons that follow, defendants' motion to dismiss is **GRANTED**.

---

[1] In their First Amended Complaint, plaintiffs identify the following individual federal actors as defendants: Michael Chertoff, Secretary of the Department of Homeland Security; Alberto Gonzales, Attorney General; Emilio T. Gonzales, Director of the United States Citizenship and Immigration Services (USCIS); and Robert S. Mueller, III, Director of the Federal Bureau of Investigation (FBI). All defendants are sued in their official capacities (Docket No. 6; First Amended Complaint at ¶ 11).

# I.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Yinzhi Zhang, her husband, plaintiff Zong Tang, and the couple's son, plaintiff Ruizhe Tang, are all citizens of the People's Republic of China. On February 11, 2004, Zhang filed an I-140 Petition for Alien Worker. Zhang's petition was approved on May 9, 2005. On June 30, 2005, plaintiffs filed I-485 applications for adjustment of status with the Vermont Service Center for the purpose of becoming permanent residents of the United States. The USCIS issued a notice acknowledging receipt of the application on July 12, 2005 (First Amended Complaint at ¶¶ 12-14).

Plaintiffs Zhang and Zhong Tang appeared at the USCIS Cleveland District Office for fingerprinting in connection with their I-485 applications. During this visit, they were advised that their cases were still pending because USCIS was awaiting security check results from the FBI. *Id*. at ¶ 17.

Plaintiffs followed up with Congressional inquiries as to the status of their applications. Senators Mike DeWine and George Voinovich replied on October 24, 2006, and advised plaintiffs by letter that the FBI name check was still pending. *Id.* at ¶ 18.  In addition, plaintiffs directed requests for information to the FBI under the Freedom of Information Act, 5 U.S.C. § 552. The FBI responded by confirming that the background name check for each plaintiff was still in process. *Id*. at ¶ 23.

On January 26, 2007, plaintiffs commenced the present litigation. At the time of the initial filing, plaintiffs' applications for adjustment of status had been pending for approximately nineteen months. In their First Amended Complaint, plaintiffs claim that defendants have "failed in their statutory and regulatory duties owed to Plaintiffs to timely

adjudicate their I-485 applications" *Id.* at ¶ 28. Plaintiffs further allege that they have suffered "significant hardship" as a result of the Government's delay, claiming that they have missed out on employment opportunities and have been limited in their ability to move about this country.[2] *Id.* at 31.

In their motion to dismiss, defendants assert that the Court lacks jurisdiction to hear this matter because the application process for I-485 petitions has been left to the sole discretion of the Attorney General. Alternatively, defendants claim that plaintiffs have failed to state a claim upon which this Court may grant relief.

## II.

### STANDARD OF REVIEW

There are two general categories into which Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994). A facial attack, which defendants insist that they are raising herein, challenges the sufficiency of the pleading itself. On such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id., citing Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974).

In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. On this form of motion, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its

---

[2] Specifically, plaintiffs assert that "[a]lthough Plaintiffs Yinzhi Zang and Zhong Tang both have PhDs, they have had to forego job opportunities because potential employers have required them to have lawful permanent resident status. Ms. Zhang has also not been able to travel for employment. Her employer wants her to travel because a product she helped develop is in the industrial design stage. However, she does not have a visa or any authorization to travel at this time. She would also like to travel with her child to see his grandparents but has been unable to do so. Furthermore, the delay in the instant case has pushed back the date when Plaintiffs will be able to apply for United States citizenship." *Id.* at 31.

power to hear the case." *Id. (internal citations omitted); RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has wide discretion to consider affidavits and documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Regardless of the type of attack, the plaintiff bears "the burden of proving jurisdiction in order to survive the motion [under 12 (b)(1)]." *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). Moreover, the Court has the obligation to satisfy itself that it has subjection matter jurisdiction over the action before it proceeds. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). *See Kusens v. Pascal Co.*, 448 F.3d 349, 359 (6th Cir. 2006).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882 (6th Cir. 1990); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

4

When a defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first, because the Rule 12(b)(6) motion will become moot if the Court lacks subject matter jurisdiction. *Moir*, 895 F.2d at 269. Hence, the Court turns first to defendants' claim that subject matter jurisdiction is lacking.

### III.

### LAW AND ANALYSIS[3]

1. **Declaratory Judgment Act and Federal Question**

Plaintiffs attempt to assert jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Federal Question statute, 28 U.S.C. § 1331. Neither of these provisions provides this Court with jurisdiction, without a further allegation of a violation of a federal statute.

Over a half century ago, the Supreme Court held that the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Similarly, the Federal Question statute does not independently support a finding of federal subject matter jurisdiction. *Sabhari v. Reno*, 197 F.3d 938, 943 (8th Cir. 1999). Ultimately, these two provisions can only provide jurisdiction when the complaint pleads a violation of a substantive right under a distinct federal statute. As such, the Court must examine the other statutes that plaintiffs rely upon to demonstrate jurisdiction.

2. **Mandamus Act**

Mandamus relief is an extraordinary remedy that "will issue only to

---

[3] Defendants argue that jurisdiction is precluded by 8 U.S.C. § 1252(g), which grants the Attorney General exclusive jurisdiction to "commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." Because this action does not involve any aspect of the removal process, § 1252(g) does not stand as a bar to jurisdiction. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999); *Mustata v. United States, DOJ*, 179 F.3d 1017, 1022 (6th Cir. 1999); *Zhislin v. Reno*, 195 F.3d 810, 813 (6th Cir. 1999).

compel the performance of a 'clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988), *quoting Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Specifically, under the Mandamus Act, 28 U.S.C. § 1361, a district court may grant a writ of mandamus only if: (1) the petitioner can establish a clear and indisputable right to the relief sought; (2) the defendant has a nondiscretionary duty to honor that right; and (3) the petitioner has no other adequate remedy. *Anjum v. Hansen*, 2007 U.S. Dist. LEXIS 22685 (S.D. Ohio Mar. 28, 2007), *quoting Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998).

In their opposition to defendants' motion to dismiss, plaintiffs assert that defendants have a non-discretionary duty to adjudicate an I-485 application. In support of their argument, plaintiffs invite the court to join the courts that have based subject matter jurisdiction on a finding of such duty.[4] The Court declines the invitation. Rather, the Court joins the courts that have refused to exercise jurisdiction for the purpose of reviewing pending I-485 applications for status adjustment. *See Kiromi v. Dist. Dir.*, *USCIS Detroit*, 2007 U.S. Dist. LEXIS 50797 (E.D. Mich. July 13, 2007); *Wei Shen v. Chertoff*, 2007 U.S. Dist. LEXIS 49546 (E.D. Mich. July 9, 2007); *Patel v. Chertoff,* 2007 U.S. Dist. LEXIS 30073 (E.D. Mo. Apr. 24, 2007); *Keane v. Chertoff*, 419 F. Supp. 2d 597 (S.D. N.Y. 2006).

In reaching this conclusion, the Court finds persuasive the reasoning in *Wei Shen*. There, the district court began with the Supreme Court's interpretation of Congress' grant of authority to the Attorney General for change of status applications. Specifically, the Supreme Court has held that it is: "[t]he power of congress to exclude aliens altogether from the

---

[4] *See Yang v. Gonzales,* 2007 U.S. Dist. LEXIS 42143 (S.D. Ohio June 11, 2007); *Elmalky v. Upchurch*, 2007 WL 944330 (N.D. Tex. Mar. 28, 2007); *Liu Duan v. Zamberry*, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. Feb. 23, 2007); *Salehian v. Novak,* 2006 WL 3041109 (D. Conn. Oct. 23, 2006); *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002); *Yue Yu v. Brown*, 36 F. Supp. 2d 922, 928 (D.N.M. 1999). While acknowledging that the Attorney General has discretion as to whether to grant a change of status application, the courts emphasized that the Attorney General does not have discretion "as to whether to adjudicate an adjustment of status application." *Bartolini*, 226 F. Supp. at 353, n. 3.

United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers without judicial intervention." *Kleindienst v. Mandel*, 408 U.S. 753, 766, *quoting Lem Moon Sing v. United States*, 158 U.S. 538, 547 (1895).

In this spirit, when Congress enacted § 245(a) of the Immigration and Nationality Act (INA), it entrusted the adjustment of alien status to the sole discretion of the Attorney General. 8 U.S.C. § 1255(a). Specifically, § 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner *may* be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence […].

(Emphasis added).

As further evidence of Congress' intent to reserve discretion to the Attorney General for the processing of alien change of status petitions, it is worth noting that the statute does not identify a time-period in which this process is to be completed. *See* §1255(a). *See also Wei Shen,* 2007 U.S. Dist. LEXIS 49546 at *9; *Elzerw v. Mueller*, 2007 WL 1221195, *2 (E.D. Pa. Apr. 23, 2007) (stating that "[n]either the statute nor the enabling regulations establish a time frame […] to adjudicate such an application"). The "absence of any such reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion." *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006). *See also Dridi v. Chertoff*, 412 F. Supp. 2d 465 (E.D. Pa. 2005) (no right to judicially compel ruling on I-129F petition for alien fiancé where no statutory time frame for ruling on such petitions).

7

Based upon the manner in which Congress has granted the Attorney General authority to resolve these petitions, the court in *Wei Shen* determined that the "Attorney General has sole discretion to process an application for adjustment of status." *Wei Shen*, 2007 U.S. Dist. LEXIS 49546 at *10. As further support for its conclusion, the court in *Wei Shen* noted that "Congress expressly precluded judicial review of 'any judgment regarding the granting of relief under section … 1255 [adjustment of status] of this title, or … any other decision or action of [their] discretion.'" *Id*. at *11, quoting 8 U.S.C. § 1252(a)(2)(B)(i),(ii). Like the court in *Wei Shen*, we find that plaintiffs have failed to demonstrate that defendants have a nondiscretionary duty to act on their applications. *See Wei Shen*, 2007 U.S. Dist. LEXIS 49546 at *11; *Patel*, 2007 U.S. Dist. LEXIS 30073 at *14; *Espin v. Gantner*, 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005). As such, mandamus relief is not available.

3. **Administrative Procedure Act**

Plaintiffs also look to the APA, 5 U.S.C. § 701 *et seq*., for subject matter jurisdiction. The APA provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Plaintiffs argue that the "APA gives rise to a legally enforceable right to the completion of an administrative agency action within a reasonable time" (Docket No. 8 at 16).

Plaintiffs' reliance on the APA for jurisdiction is misplaced. Section 704 does provide review for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court […]." 5 U.S.C. § 704. Plaintiffs cite to no statutory provision that specifically grants judicial review over pending change of status applications, and the provision, itself, states that it does not confer jurisdiction where the agency

decision is not final. *Patel*, 2007 U.S. Dist. LEXIS 30073 at *9; *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1239 (11th Cir. 2003). *See also Independent Petroleum Ass'n v. Babbitt*, 235 F.3d 588 (D.C. Cir. 2001). Of course, a final decision has yet to be rendered on plaintiffs' applications.

Additionally, the Court notes that the APA, itself, states that a plaintiff cannot seek to compel "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). *See Wei Shen*, 2007 U.S. Dist. LEXIS 49546 at * 12-13. As previously discussed, Congress has clearly committed to the Attorney General the discretion to resolve change of status applications. *See* 8 U.S.C. § 1255(a).

Plaintiffs, however, point to 5 U.S.C. § 706(1), which provides that a district court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further provides in § 555(b) that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

Even if the Court were to have found that §§ 555(b) and 706(1), in combination, created limited circumstances under which a district court may exercise jurisdiction over the change of status process, the facts that would arguably give rise to such jurisdiction are clearly not present in this case. Plaintiffs have not alleged any facts that would indicate that their applications have been unreasonably delayed. *See Attias v. Chertoff*, 2006 U.S. Dist. LEXIS 41993 (E.D. Mo. June 22, 2006) (3 year delay not unreasonable where complaint failed to allege other circumstances of unreasonableness). Nor have plaintiffs alleged that defendants are adverse to processing their applications. *See Kiromi*, 2007 U.S. Dist. LEXIS 50797 at *6 (While plaintiff's I-485 application had been pending for almost 2 years, plaintiff had not shown that

defendants were unwilling to adjudicate it). On the contrary, plaintiffs assert that defendants have taken their fingerprints, have met with them, and have requested and are processing the appropriate background checks (First Amended Complaint at ¶¶ 15 – 17). Clearly, defendants have not sat idly by, unwilling to process plaintiffs' applications. *See Patel*, (despite the fact that plaintiffs' applications had been pending for four and one-half years, there was no unreasonable delay where government entities were actively pursuing a resolution to the applications).

While the Court understands that delays can be frustrating, the wait is necessary. In connection with their motion, defendants offered the declaration of Michael A. Cannon, Section Chief of the National Name Check Program, a division of the FBI.[5] In his declaration, Mr. Cannon explained that the process for checking a name against the FBI's electronic Universal Index is involved.[6] While most are completed within 48 – 72 hours, some checks require additional investigation that can substantially delay final resolution. Moreover, the volume of requests is mounting. Prior to September 11, 2001, 2.5 million name checks were requested of the FBI. This number has grown exponentially in light of the increased counterterrorism efforts since September 11, 2001. In 2006, the number of requests for name checks had risen to over 3.4 million.[7] There is no question but that the FBI's task in carefully and thoroughly processing these name checks is considerable.

Nonetheless, plaintiffs seek a speedier resolution to their applications. The

---

[5] In light of the fact that defendants have filed a "facial attack" under Fed. R. Civ. P. 12(b)(1), the Court is required to treat the allegations in the First Amended Complaint as true. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). As such, the Court underscores the fact that it is not relying on Mr. Cannon's declaration to bolster its conclusion that it lacks jurisdiction. The Court finds that, based upon the First Amended Complaint, itself, plaintiffs have failed to assert a basis for federal subject matter jurisdiction. Reference to Mr. Cannon's declaration is made solely to edify plaintiffs as to the reason for the delay.

[6] Name checks are required for a variety of reasons, including: the employment of new government employees, changes in security clearance, requests to attend a White House function, admission to the bar, and, of course, immigration applications. Currently 70 different federal, state, and local agencies submit name check requests (Cannon Aff. at ¶ 4).

[7] In addition, in December of 2002, and January of 2003, the former INS resubmitted 2.7 million name checks associated with pending immigration applications. These requests were in addition to the original requests that had been received by the FBI and have caused additional delays (Cannon Aff. at ¶ 18).

Court is sympathetic to plaintiffs' frustration over the delay, but it cannot say that the delay, alone, confers jurisdiction under any of the statutory provisions cited by plaintiffs. In this post-September 11, 2001 world, these delays are necessary to adequately ensure the safety and security of this country and those who reside in it, both citizen and alien alike. Furthermore, the Court is unwilling to assert jurisdiction over a matter that has clearly been entrusted to the Executive Branch, with the result that plaintiffs' applications would be resolved ahead of the applications of others who are "ahead of them in line."

## IV.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss (Docket No. 7) is hereby **GRANTED**. This case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: August 31, 2007
                                                             *s/ Sara Lioi*
                                                             Hon. Sara Lioi
                                                             United States District Judge